**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 96-30254
_____

EDWARD ROBINSON,

Plaintiff-Appellant,

versus

ENSCO OFFSHORE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
For the Eastern District of Louisiana
(95-CV-19-C)

_____

May 19, 1997

Before REYNALDO G. GARZA, EMILIO M. GARZA, and DeMOSS, Circuit
Judges.

EMILIO M. GARZA, Circuit Judge:[*]

Plaintiff Edward Robinson ("Robinson") appeals the district

court's dismissal of his action pursuant to Federal Rule of Civil

Procedure 52(c).  We affirm.

I

Premiere, Inc., a subcontractor of the Kinlaw Oil Corporation

_____

[*]      Pursuant to Local Rule 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in Local Rule
47.5.4.

("Kinlaw"), employed Robinson as a diesel hammer operator on the PENROD 90, a drilling vessel owned and operated by Defendant Ensco Offshore Company ("Ensco"), formerly Penrod Drilling Company ("Penrod"). On or before September 28, 1992, Penrod had entered into a Domestic Day Work Drilling Contract-Offshore with Kinlaw.

On May 23, 1993, the Premiere hammer crew and the Penrod drilling crew were working together to drive conductor pipe. They had difficulty starting the diesel hammer because it had become damp, so Robinson attempted to start the hammer by spraying starting fluid (ether) into it.[1] Robinson was lifted in a "man rider" by means of an air-hoist approximately forty feet above the drill floor to enable him to spray the starting fluid into the intake port of the hammer. To do so, Robinson had to place his arm inside the hammer "cage."[2] During this spraying process, the hammer moved or was fired; Robinson sustained severe injuries to his right arm when it was caught inside the cage and crushed.

Robinson thereafter filed suit against Ensco under the General Maritime Law, 28 U.S.C. § 1333[3] and 33 U.S.C. § 905(b),[4] seeking

_____

[1]     Starting fluid dries moisture, thereby assisting in ignition.

[2]     At oral argument, counsel for Ensco explained that the "cage" is four beams that surround the hammer.

[3]     Section 1333 provides in relevant part:
The district courts shall have original jurisdiction, exclusive of the courts of the States, of:
    (1) Any civil case of admiralty or maritime
    jurisdiction, saving to suitors in all cases
    all other remedies to which they are otherwise

-2-

damages for the injury to his arm.  Under Robinson's theory of the case, the accident occurred when the Ensco driller, Robert Hall, fired the hammer without warning and without a signal from Robinson.

During the bench trial, Robinson presented the testimony of several witnesses, including four who had first-hand knowledge of the accident:  himself, Ronnie Thacker, Darrell Broussard, and Gerald Stelly.  Robinson himself was the only witness who was in a position to see whether he gave a signal to Hall to fire the

---

entitled. . . .

[4]     Section 905(b) provides:
In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void.  If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel.  If such person was employed to provide shipbuilding, repairing, or breaking services and such person's employer was the owner, owner pro hac vice, agent, operator, or charterer of the vessel, no such action shall be permitted, in whole or in part or directly or indirectly, against the injured person's employer (in any capacity, including as the vessel's owner, owner pro hac vice, agent, operator, or charterer) or against the employees of the employer.  The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred.  The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.

hammer.  Thacker and Broussard both testified that at the time of the accident, they were not in positions to see a signal if one had been given.[5]  Stelly testified by deposition that he could not remember whether a signal had been given.

Robinson also testified that the accident happened on his first attempt to start the hammer by spraying starting fluid, and that he had not previously tried to start the hammer until he went up with the ether the time the accident occurred.  Thacker, however, testified that he heard Robinson and Broussard attempt to start the hammer ten times and that he then helped Robinson try to start it approximately five additional times.  Likewise, Broussard testified that Robinson attempted to start the hammer with Broussard's assistance.  Thereafter, Broussard took a three to five hour nap.  According to Broussard, when he awoke Robinson was still attempting to start the hammer and the accident occurred.[6]  Stelly stated that Robinson had sprayed ether ten to fifteen times before the accident, had used several cans of ether, and that after each spraying Robinson would either swing away from the cage or stay at

---

[5]    Specifically, Thacker testified that only after he heard Robinson shout subsequent to the accident did he walk around the back of the hammer to look up at Robinson.  Broussard testified that he did not look at Robinson prior to the accident and would not have seen a signal if one were given.

[6]    Though the district court recited Broussard's testimony in its factual findings, it explained that Broussard's testimony contradicted his deposition testimony to such an extent that the court did not think Broussard "remembered very much."  Thus, the court stated that it was "not relying on his testimony either for or against the plaintiff at this point."

the cage while the driller attempted to fire the hammer.

Charles Boudreaux, Premiere's district manager at the time of accident, testified that he went to the hospital a few days after the accident with Curtis Gonzales, Premiere's safety director. Boudreaux stated that Robinson did not know exactly how the accident occurred, but that Robinson did have "some idea" about how it happened. Boudreaux testified that Robinson explained to him that he sprayed the ether in the hammer, swung away from the cage to hold onto to a beam in the derrick, missed the beam, swung back into the hammer and was injured. Boudreaux testified that Robinson never said that the driller fired the hammer when he should not have done so; in fact, Robinson said nothing about a signal at all.

Robinson, however, denied giving the driller any signal to move or fire the hammer and denied swinging out to grab the beam or staying close to the cage while the hammer fired. Robinson also testified that he had no recollection from the moment of the accident to being in the hospital a few days later. All he remembered was spraying the ether and feeling the hammer move. He testified at trial that he had no recollection of speaking to Boudreaux and Gonzales in the hospital; Robinson had testified in his deposition, however, that he did remember seeing Boudreaux and Gonzales in the hospital and that they had asked him how the accident had occurred.

After Robinson presented his case-in-chief, Ensco moved for involuntary dismissal. The district court took Ensco's motion

under submission and asked Ensco to present its liability witnesses before the court considered Ensco's motion. Ensco identified its liability witnesses as Gonzales, Mike Poche and Daniel Doggett.

Gonzales testified that Robinson told him in the hospital emergency room that the accident had occurred when Robinson sprayed the ether, told his assistant Thacker to start the hammer, pushed off from the hammer, missed the beam and swung back into the hammer. Gonzales testified that Robinson reiterated this account of the accident when Gonzales visited Robinson again in the hospital a few days later with Boudreaux. Gonzales testified that during neither conversation did Robinson say that the driller had fired the hammer prematurely.

After Gonzales's testimony, the court took a brief recess and returned to dismiss Robinson's action pursuant to Federal Rule of Civil Procedure 52. The court found that Robinson had not established by a preponderance of the evidence that Ensco was at fault in the accident. The court observed that Robinson was the only witness who testified that the driller fired the hammer without warning and without a signal, and concluded that there was no corroboration of Robinson's version of the accident by other witnesses.[7] The court found Robinson's recollection of the

---

[7] The court noted that Thacker and Broussard both came on the scene immediately after the accident and did not know and could not testify whether there was a signal or where Robinson's arm was when the accident occurred. The court also noted that Stelly did not know whether a signal was given.

accident not sufficiently reliable to sustain his burden of proof.[8]

The district court denied Robinson's subsequent motion for a new trial. Robinson appeals.

II

A

Robinson's first two arguments attack the trial court's findings pursuant to Rule 52: that the findings are inadequate to give a clear understanding of the process by which the court's ultimate conclusions were reached and thus inadequate to permit appellate review, and that the findings are clearly erroneous. *See Curtis v. Commissioner of Internal Revenue*, 623 F.2d 1047, 1051 (5th Cir. 1980) (describing two types of attacks on findings pursuant to Rule 52). We turn first to Robinson's contention that the district court did not provide adequate findings of fact and conclusions of law as required by Rule 52.

---

[8] The district court explained that the testimony of all of the witnesses other than Robinson contradicted Robinson's testimony about the circumstances of the accident. Robinson testified that the accident occurred on his first or second attempt to spray the ether, and denied both that he had been working on the hammer for a period of time before the accident and that he had been swinging out to grab the beam each time while the driller attempted to fire the hammer. Thacker and Broussard, however, both testified that Robinson had tried to start the hammer ten to fifteen times before the accident. Stelly testified that Robinson would spray the ether and then swing out and grab the beam. Finally, the district court observed that the account of the accident that Robinson gave to Gonzales and Boudreaux at the hospital, i.e., that the accident occurred when Robinson sprayed the ether, swung out to catch the beam, missed the beam, and swung back into the hammer, was generally consistent with the testimony of the witnesses to the accident, except for Robinson himself.

Rule 52(c) states that a judgment on partial findings "shall be supported by findings of fact and conclusions of law as required by subdivision (a) of [Rule 52]." Rule 52(a) provides that "the court shall find the facts specially and state separately its conclusions of law thereon. . . . It will be sufficient if the findings of fact and conclusions of law are stated orally and recorded in open court following the close of the evidence . . . ."

The purpose of Rule 52(a) is to aid the appellate court by affording it a clear understanding of the ground or basis of the decision of the trial court. *S.S. Silberblatt, Inc. v. United States ex rel. Lambert Corp.*, 353 F.2d 545, 549 (5th Cir. 1965). Failure to meet the technical requirements of Rule 52 does not warrant reversal or remand as long as the purposes behind the rule are effectuated. *Chandler v. City of Dallas*, 958 F.2d 85, 89 (5th Cir. 1992).

Hence, Rule 52(a) "exacts neither punctilious detail nor slavish tracing of the claims issue by issue and witness by witness." *Schlesinger v. Herzog*, 2 F.3d 135, 139 (5th Cir. 1993) (citations omitted). Rule 52(a) does not require that the trial court set out findings on all the myriad factual questions that arise in a case. *Golf City, Inc. v. Wilson Sporting Goods Co.*, 555 F.2d 426, 433 (5th Cir. 1977). It simply requires findings that are explicit and detailed enough to enable us to review them under

the applicable standard. *Schlesinger*, 2 F.3d at 139; *see also Lopez v. Current Dir. of Tex. Econ. Dev. Comm'n*, 807 F.2d 430, 434 (5th Cir. 1987) ("The correct application of the clearly erroneous standard requires that an appellate court be able to discern the evidentiary basis for a trial court's factual finding.").

The district court's findings of fact and conclusions of law in this case, made orally as permitted by Rule 52(a), certainly enable us "to obtain a 'full understanding of the issues on appeal.'" *Chandler*, 958 F.2d at 90 (quoting *Texas Extrusion Corp. v. Palmer, Palmer & Coffee (In re Texas Extrusion Corp.)*, 836 F.2d 217, 221 (5th Cir. 1988)). We are not left "'[t]o speculate as to the factual basis for the district court's conclusion.'" *West Wind Afr. Line, Ltd. v. Corpus Christi Marine Servs. Co.*, 834 F.2d 1232, 1235 (5th Cir. 1988) (quoting *Salinas v. Roadway Express, Inc.*, 735 F.2d 1574, 1578 (5th Cir. 1984)). Rather, the district court made specific findings supporting its conclusion that Robinson failed to establish by a preponderance of the evidence that Ensco was at fault in the accident. In particular, the district court observed that Robinson was the only witness who testified that the driller fired the hammer without warning and without a signal. The court catalogued the testimony of the witnesses to the accident and concluded that no witness corroborated Robinson's version of the accident. The court also provided specific reasons for finding that Robinson's recollection of the accident was not sufficiently

reliable to sustain his burden of proof. In sum, the district court's findings are "sufficiently detailed to give us a clear understanding of the analytical process by which ultimate findings were reached and to assure us that the trial court took care in ascertaining the facts." *Golf City*, 555 F.2d at 433.[9]

2

Contending that he proved Ensco's fault "based on the eyewitnesses who were called in [his] case," Robinson also argues that the district court erred in finding that he had not proved Ensco's liability by a preponderance of the evidence. Robinson specifically asserts that the eyewitnesses to the accident demonstrated Ensco's liability because they testified that Robinson had not finished spraying the ether when the accident occurred and that Robinson did not give a signal to the driller to fire or move the hammer prior to the accident.

We review district court judgments on partial findings pursuant to Rule 52(c) for clear error. *Southern Travel Club, Inc. v. Carnival Air Lines, Inc.*, 986 F.2d 125, 128 (5th Cir. 1993).

---

[9] To support his claim that the district court did not provide adequate findings of fact and conclusions of law, Robinson presents a list of "factual" questions he claims the district court failed to answer. The district court's "failure" to answer Robinson's questions, however, does not constitute a violation of Rule 52. *Cf. Schlesinger*, 2 F.3d at 139 ("In essence, the appellants list their own version of the facts and then complain that the district court violated Rule 52 by ignoring these 'facts.' The district court did not ignore facts. It simply found facts contrary to the appellants' liking.").

*See* Rule 52(c) advisory committee's note (judgment on partial findings, unlike a summary judgment, "is made after the court has heard all evidence bearing on the crucial issue of fact, and the finding is reversible only if the appellate court finds it to be 'clearly erroneous'").

In other words, we will not set aside the district court's finding unless, based upon the entire record, we are "left with the definite and firm conviction that a mistake has been committed." *Southern Travel Club*, 986 F.2d at 128 (quoting *Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S. Ct. 1504, 1511, 84 L. Ed. 2d 518 (1985)). If the district court's account of the evidence is plausible in light of the record, we will not reverse it))even if convinced that had we been sitting as trier of fact, we would have weighed the evidence differently. *Id.; see also Movible Offshore, Inc. v. M/V Wilken A. Falgout*, 471 F.2d 268, 271 (5th Cir. 1973) ("The question is . . . whether the trial court could permissibly find as it did."). Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. *Anderson*, 470 U.S. at 574, 105 S. Ct. at 1511.

Because this case turned almost exclusively on determinations regarding the credibility of witnesses, Rule 52(a) demands even greater deference to the trial court's findings. *Schlesinger*, 2 F.3d at 139. Where the court's finding is based on its decision to credit the testimony of one witness over that of another, that

finding, if not internally inconsistent, can virtually never be clear error. *Id.* "[O]nly the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Anderson*, 470 U.S. at 575, 105 S. Ct. at 1512.

The district court's conclusion that no witnesses corroborated Robinson's version of the accident, though at odds with Robinson's contention that the eyewitnesses established that no signal was given, is more than plausible in light of the record. Though Robinson testified that Hall fired the hammer without warning and without a signal, Thacker and Broussard both came on the scene after the accident and did not know whether a signal had been given or where Robinson's arm was when the accident occurred. Stelly testified that Robinson had not finished spraying the ether before the accident occurred, but that he did not know whether a signal had been given.

Moreover, we find no clear error in the district court's conclusion that Robinson's testimony lacked credibility. The testimony of all of the other witnesses contradicted, or at least did not corroborate, Robinson's statements about the accident. Robinson testified that the accident occurred on his first or second attempt to spray the ether, and denied both that he had been working on the hammer for a period of time before the accident and that he had been swinging out to grab the beam each time while the

-12-

driller attempted to fire the hammer.  Thacker and Broussard, however, both testified that Robinson had tried to start the hammer ten to fifteen times before the accident.  Stelly testified that Robinson would spray the ether and then swing out and grab the beam.  Furthermore, the account of the accident that Robinson gave to Gonzales and Boudreaux at the hospital, i.e., that the accident occurred when Robinson sprayed the ether, swung out to catch the beam, missed the beam, and swung back into the hammer, was generally consistent with the testimony of the witnesses to the accident, except for Robinson himself.  The record reveals no clear error in the district court's findings and we therefore affirm its conclusion that Robinson did not establish Ensco's fault in the accident by a preponderance of the evidence.

B

Robinson next contends that the district court erroneously based its decision on deposition testimony that was not entered into evidence at trial.  In its reasons for granting judgment in favor of Ensco, the district court refers to driller Hall's deposition.  However, though Hall's deposition was provided to the court prior to trial, neither party offered it into evidence.

Robinson's argument is generally analogous to a claim that the district court improperly admitted evidence and then relied upon it in reaching its decision.  In a non-jury case, the admission of incompetent evidence will not warrant reversal unless all of the competent evidence is insufficient to support the judgment, or

-13-

unless it affirmatively appears that the incompetent evidence induced the court to make an essential finding which would otherwise not have been made. *Goodman v. Highlands Ins. Co.*, 607 F.2d 665, 668 (5th Cir. 1979).[10] As we have concluded above that the district court did not err in finding, without reference to Hall's deposition, that Robinson did not prove his case, we similarly conclude that the competent evidence is sufficient to support the judgment. Thus, we address here only whether Hall's deposition testimony induced the district court to make an essential finding it otherwise would not have.

The district court undoubtedly considered Hall's deposition in making its decision. In its reasons for granting judgment in favor of Ensco, the court stated that "[t]he driller, Mr. Hall, in his

---

[10]  *See* Fed. R. Civ. P. 61 ("No error in either the admission or the exclusion of evidence . . . is ground for granting a new trial . . . unless refusal to take such action appears to the court inconsistent with substantial justice.  The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."); 28 U.S.C. § 2111 ("On the hearing of any appeal or writ of certiorari in any case, the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties."); *see also American Universal Ins. Co. v. Dykhouse*, 326 F.2d 694, 697 (8th Cir. 1964) (finding that because substantial evidence existed to support judgment, trial court's error in considering depositions which were filed but not offered as evidence was at most harmless, resulting in no prejudice to appellant); *Oates v. S. J. Groves & Sons Co.*, 248 F.2d 388, 389 (6th Cir. 1957) (per curiam) (finding that where deposition that was read by district court during recess in trial but was not formally introduced in evidence dealt with no new fact not otherwise fully covered by other competent evidence, no prejudicial error occurred).

deposition, states that he would not have fired the hammer without a signal," and that "Mr. Hall, the driller, also said that the plaintiff kept spraying the hammer and then he would either swing away or remain by the cage." The district court acknowledged, however, that Hall apparently did not "specifically remember what happened . . . immediately before the accident."

Robinson contends that Hall's deposition induced the court to find that Robinson signaled prior to the accident. A close reading of the district court's findings, however, reveals that it did not so find. Rather, the court found that Hall did not specifically remember what had occurred prior to the accident and speculated that "what may have happened" was that the plaintiff gave a signal to fire and was injured upon missing the beam and swinging back into the hammer. Though Robinson testified that he did not give Hall a signal to fire the hammer, no witness with first-hand knowledge of the accident could corroborate Robinson's contention. Moreover, the district court specifically found that Robinson's recollection of the accident was unreliable. Under these circumstances, any reliance on Hall's assertion that he "would not have fired the hammer without a signal" cannot be said to have induced the court to find that a signal was given when it otherwise would not have so found. Indeed, the district court made no finding regarding whether a signal was given; rather, it concluded that Robinson had not proved that he did not give a signal.

The testimony of other witnesses also corroborates Hall's

statement that Robinson "kept spraying the hammer and then he would either swing away or remain by the cage." Stelly testified that Robinson would spray the ether and then either swing away from the hammer cage or remain near the cage while the hammer fired. Similarly, both Boudreaux and Gonzales testified that Robinson told them that after spraying the ether he swung away from the hammer cage. Thus, any reliance on Hall's statement regarding Robinson's actions near the hammer before the accident did not induce the court to make an essential finding it otherwise would not have made.[11]

## C

Robinson next argues that the district court erred in granting

---

[11] One final issue deserves comment. Robinson's claim that the district court erroneously relied upon Hall's deposition differs from a claim of admission of incompetent evidence in one respect: opportunity for rebuttal. In a case where the court admits incompetent evidence, the party opposing its admission presumably has had an opportunity to rebut that evidence. As he correctly asserts, Robinson had no opportunity to rebut Hall's deposition testimony in this case. Robinson contends that, given the opportunity, he would have presented the testimony of Daniel Doggett, a floor hand on the PENROD 90 at the time of the accident, who gave a statement on the day of the accident that he did not see a signal prior to the accident.

Under the circumstances of this case, however, we do not think that Robinson's lack of opportunity to rebut Hall's deposition requires reversal. The district court heard testimony similar to Doggett's proposed testimony from several other witnesses and Robinson fails to explain how Doggett's statement differs from that testimony. *Cf. Wright v. Southwest Bank*, 554 F.2d 661, 663-64 (5th Cir. 1977) (finding that district court's acceptance of, and reliance on, *ex parte* evidence was reversible error where opposing party had no opportunity to test its validity and similar evidence had not been introduced, but was harmless error where similar evidence had been previously introduced into evidence).

judgment against him pursuant to Rule 52(c) because Robinson had not been "fully" heard on the issue of liability because the district court did not permit Robinson to present rebuttal testimony. Specifically, Robinson contends that the district court improperly refused to permit him to rebut Gonzales's testimony and Hall's deposition testimony.[12] Whether to allow evidence in rebuttal is a matter within the trial court's discretion, reviewable only for an abuse. *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 685 (5th Cir. 1991).

Rebuttal is a term of art, denoting evidence introduced by a plaintiff to meet new facts brought out in his opponent's case in chief. *Morgan v. Commercial Union Assurance Cos.*, 606 F.2d 554, 555 (5th Cir. 1979); *see also Rodriguez v. Olin Corp.*, 780 F.2d 491, 496 (5th Cir. 1986) ("[E]vidence is new if, under all the facts and circumstances, the court concludes that the evidence was not fairly and adequately presented to the trier of fact before the defendant's case in chief."). Gonzales's testimony, however, did not present new facts. Rather, Gonzales simply reiterated facts that had been elicited from Boudreaux by Ensco during cross-examination.

Nor did the district court abuse its discretion in refusing to permit Robinson to present rebuttal testimony from family members

---

[12]    As we have already addressed Robinson's claim regarding rebuttal of Hall's deposition, we devote this discussion only to his claim regarding rebuttal of Gonzales's testimony.

to establish that Robinson was "incoherent" while in the hospital, and therefore "incoherent" during the conversation with Gonzales and Boudreaux. Both Boudreaux and Gonzales testified that they did not remember any family members being present during their conversation with Robinson in the hospital. Moreover, Robinson's wife testified that Robinson "didn't say too much in the hospital. He just was in a lot of pain," and that Robinson "wasn't responding to anyone" while in the hospital. Even Boudreaux testified that Robinson "was a little disoriented, because of pain pills. I guess he was on pain pills." In light of this testimony, the district court did not abuse its discretion in refusing to take additional testimony regarding Robinson's alleged "incoherence" while in the hospital. *See Tramonte v. Fibreboard Corp.*, 947 F.2d 762, 766 (5th Cir. 1991) ("A trial court does not abuse its discretion in excluding rebuttal evidence when the offering party already has presented evidence on the same issue as a part of its case."); *Orduna S. A. v. Zen-Noh Grain Corp.*, 913 F.2d 1149, 1154 (5th Cir. 1990) (same).

D

Robinson also argues that the district court erred in excluding the expert testimony of Robinson's witness Edward B. Robert, Jr. on the issue of safety standards in the industry. The admission or exclusion of expert testimony is a matter left to the discretion of the trial judge, and his or her decision will not be

disturbed on appeal unless it is manifestly erroneous. *Smogor v. Enke*, 874 F.2d 295, 297 (5th Cir. 1989) (quoting *Perkins v. Volkswagen of Am., Inc.*, 596 F.2d 681, 682 (5th Cir. 1979)); *see also Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 280 & n.32 (5th Cir.) (quoting and relying on *Perkins*, and explaining that the "manifest error" standard is harmonious with the "abuse of discretion" standard as applied to this issue in other Fifth Circuit cases), *cert. denied*, 484 U.S. 851, 108 S. Ct. 152, 98 L. Ed. 2d 107 (1987).

Ensco moved *in limine* to exclude Robert's testimony regarding the functioning of a diesel hammer. Robinson opposed the motion, arguing that Robert should be permitted to testify regarding "the functioning and safe operation of the hammer under the existing circumstances." In his opposition to the motion *in limine*, Robinson also included a list of propositions to which he asked Ensco to stipulate in exchange for Robinson's agreement not to present Robert's testimony. Included in this list is the statement that "[t]he driller should not fire or move the hammer at any time when the hammer operator is not in a position of safety away from the hammer."

On the morning of trial, the district court ruled on Ensco's motion *in limine* as follows:

> The second motion was to exclude the plaintiffs [sic]
> safety expert. The plaintiffs [sic] can use any witness
> with knowledge that he wishes including the safety expert

to explain the use of the equipment that was involved with this injury. I do not need the expert's opinion on the cause of the accident however.

Vol. 4, 4:15-20. Then, prior to Robert's testimony, the court instructed him that he could testify about

[h]ow the piece of equipment works. How this goes this way, that goes that way. . . . I'm not taking any opinions as to whether it was operated safely *that day* or anything along those lines.

Vol. 4, 55:7-10 (emphasis added).

In other words, though Robinson maintains that the district court prevented him from presenting expert testimony regarding safety procedures in the industry, the plain language of the district court's ruling and subsequent clarification reveal that it did not prohibit Robert from explaining industry safety procedures. To the contrary, the court only excluded Robert's testimony insofar as it bore on the ultimate question of the cause of the accident. Our review of the record reveals no occasion on which Robinson either attempted to clarify the court's ruling regarding Robert's testimony or was prohibited by the court from questioning Robert regarding safety procedures in the industry. Under these circumstances, the district court's decision to exclude Robert's expert testimony on the ultimate issue of the cause of the accident was not manifestly erroneous.

E

Robinson last argues that the district court erred in refusing to permit him to introduce evidence that Premiere was adverse to

him.  Apparently Robinson refers to the district court's refusal to permit him to cross-examine Gonzales regarding an alleged indemnity agreement between Premiere and Kinlaw.[13]  We review a district court's evidentiary rulings for an abuse of discretion.  *LeBoeuf v. K-Mart Corp.*, 888 F.2d 330, 333 (5th Cir. 1989).

Robinson argues that the indemnity agreement would have shown Gonzales's bias and his reason for testifying in a manner adverse to Robinson.  Robinson also claims that he would have used the agreement to impeach Boudreaux and Broussard, his own witnesses.  A plain reading of the contract, however, reveals only that Premiere owed defense and indemnity to Kinlaw, not to Kinlaw's subcontractor Ensco.  Robinson does not argue, and indeed the contract does not provide, that Premiere owed Kinlaw indemnity for its defense and indemnity of Ensco.  Robinson does not explain how under these circumstances the Premiere witnesses, including those called by Robinson himself, would have had a bias.  Kinlaw did not

---

[13]    The Master Service Contract between Premiere and Kinlaw provides:
    5.1  CONTRACTOR [PREMIERE, INC.] shall defend, indemnify and hold KINLAW and its parent or affiliated companies harmless from and against every . . . demand, claim, cause of action, loss, liability, or expense (including legal fees) arising in favor of CONTRACTOR, CONTRACTOR'S employees or agents, or CONTRACTOR'S subcontractors or their employees on account of personal injury . . . regardless of whether caused or contributed to, in whole or in part, by the sole or concurrent negligence (including gross negligence) of KINLAW, its contractors, unseaworthiness of any vessel, strict liability, or preexisting condition.

tender the defense and indemnity of Ensco to Premiere, and the terms of the contract do not indicate that it could. As a result, we find no abuse of discretion in the district court's refusal to permit Robinson to cross-examine Gonzales about the indemnity agreement between Kinlaw and Premiere.

III

For the foregoing reasons, we AFFIRM the judgment of the district court in all respects.

-22-